IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

MARK ADAMS and KATHY ADAMS,
Individually and on behalf of all others similarly situated                    PLAINTIFFS

v.                                      No. 2:12-cv-02173-PKH

CAMERON MUTUAL INSURANCE COMPANY                                      DEFENDANT

## <u>MEMORANDUM OPINION AND ORDER</u>

Currently before the Court are Plaintiffs' Motion to Certify Question of Law to the Arkansas Supreme Court[1] (Doc. 11), Defendant's Response in Opposition (Doc.12), and Plaintiffs' Reply (Doc. 18).  Plaintiffs' Reply was filed without leave, but has nevertheless been considered by the Court.  For the reasons stated herein, Plaintiffs' Motion to Certify Question of Law to the Arkansas Supreme Court (Doc. 11) is **GRANTED**.

Also before the Court is Defendant's Motion for Summary Judgment (Doc. 13) and supporting documents, Plaintiffs' Response (Doc. 21) and Defendant's Reply (Doc. 24).  For the reasons set forth below, that Motion is **DENIED**.

## I. Background

Plaintiffs Mark Adams and Kathy Adams ("the Adamses") brought this class action individually and on behalf of a proposed class asserting a claim against Defendant Cameron Mutual Insurance Company ("Cameron Mutual") for breach of contract, which claim involves the interpretation of a homeowners insurance policy ("the Policy") covering the Adamses' dwelling in Mena, Arkansas.  The Policy had a coverage period of June 1, 2008 to June 1, 2009 and policy limit of $49,900.  On April 9, 2009, the Adamses incurred a loss to their dwelling due to tornado damage.

---

[1] Plaintiffs did not file a brief in support of their Motion as required by Local Rule 7.2(a) and are advised to comply with the Local Rules when filing any future motions in this Court.

There appears to be no dispute that the damage from the tornado was a covered loss.

On April 15, 2009, Cameron Mutual's adjuster inspected the damage to the dwelling and determined the loss to be in the amount of $48,647.04. The repair costs calculated by the adjuster were for costs of materials and labor to repair the dwelling. Cameron Mutual calculated depreciation of the items being repaired based on the age of the dwelling and the age of the items being repaired. Some of the items depreciated were labor only services such as removal of roof decking, siding, and carpet/vinyl flooring. The materials and labor necessary to make the repairs were depreciated in the total amount of $8,364.66. On May 11, 2009, the Adamses signed a Proof of Loss stating the amount claimed was $39,204.88. (Doc. 12-2). On May 7, 2009, Cameron Mutual issued a sight draft to the Adamses in the amount of $39,204.88 in payment of the Adamses' claim. (Doc. 12-3). This amount represented the covered loss to the dwelling less depreciation and other applicable deductions.

The Policy provides that a covered loss will be paid based on the actual cash value of the property as opposed to replacement value. (Doc. 1-1, p. 8). The Policy states:

> 5. Loss Settlement. Covered property losses are settled at actual cash value at the time of loss but not more than the amount required to repair or replace the damaged property.

(Doc. 1-1). The term "actual cash value" is not defined in the policy.

The Adamses argue that the purpose of the Policy is to provide indemnity for a covered loss, which would place the Adamses in the same position they were in immediately before the loss occurred. The Adamses agree that the materials necessary to make the repairs are depreciable and that it was proper for Cameron Mutual to depreciate materials in determining the "actual cash value" of the covered loss. The Adamses contend, however, that the labor necessary to make the repairs is not depreciable and that it was not proper for Cameron Mutual to depreciate labor in determining

2

the "actual cash value" of the covered loss.  As a result, the Adamses claim they have been under-indemnified and underpaid for their covered loss.  The Adamses claim that Cameron Mutual breached the Policy by applying a depreciation factor to the labor portion of the repairs.

The central issue in this case is the meaning and interpretation of "actual cash value" in the Policy, and specifically, whether "actual cash value" allows for depreciation of both material and labor.  The parties agree that the term is not defined in the Policy.  The Adamses contend that the meaning of the term "actual cash value" in the context of an insurance policy has never been decided under Arkansas law.  Cameron Mutual contends that the question has been sufficiently answered by Arkansas statute and case law as well as case law from other jurisdictions.  The Adamses move for an order of this Court to certify the question to the Arkansas Supreme Court.  Cameron Mutual opposes the Motion to Certify.

## II.    Discussion

### A.    Certification Generally

Federal courts sitting in diversity must apply the substantive law of the forum state as declared by the state's legislature in a statute or by its highest court in a decided case.  *Erie Railroad Co. v. Tompkins*, 304. U.S. 64, 78 (1938).  This often presents a problem when a federal court is confronted with an unresolved issue of state law.  In such a scenario, a federal court essentially has two options.  One option is to make an "Erie-educated guess" as to what the state supreme court would rule if confronted with the same issue.  *Blankenship v. USA Truck, Inc.*, 601 F.3d 852, 856 (8th Cir. 2010).  The other option is for the federal court to avail itself of a  procedure established by the rules of the highest state court for certification of legal questions involving an unresolved issue of law.  Whether a federal court decides to certify a question of law to a state supreme court

3

is a matter left to the sound discretion of the federal court.  *Allstate Ins. Co. v. Steele*, 74 F.3d 878, 881 (8th Cir. 1996).

"The standards governing a decision to certify stem from both state and federal law." *Lickteig v. Kolar*, 2009 U.S. App. LEXIS 29111 at *9 (8th Cir. Sept. 17, 2009) (quotation omitted). Under Arkansas law, the Supreme Court of Arkansas has the power to "answer questions of law certified to it" by a federal court if the federal court proceeding involves "questions of Arkansas law which may be determinative of the cause . . . and as to which it appears to the certifying court there is no controlling precedent in the decisions of the Supreme Court."  Ark. Sup. Ct. & Ct. App. R. 6-8(a)(1).  Acceptance of certification by the Arkansas Supreme Court will occur only where all facts material to the question of law to be determined are undisputed, and there are special and important reasons to accept the certification. *Longview Prod. Co. v. Dubberly*, 352 Ark. 207, 210 (2003).  One reason for accepting certification is if "[t]he question of law is one of first impression and is of such substantial public importance as to require a prompt and definitive resolution by the court."  *Id.*

"Under federal jurisprudence, certification is particularly appropriate when the question presented is novel and state law is unsettled." *Lickteig*, 2009 U.S. App. LEXIS 29111 at *9.  "While judgment and restraint are to be used in deciding whether to certify a question, when the state law is in doubt and touches on public policy concerns that are of particular interest to state law, it is in the best administration of justice to seek further guidance from state courts." *Id.* (internal quotations and citations omitted).

The court views the legal question at hand to be as follows:

Whether an insurer, in determining the "actual cash value" of a covered loss under an indemnity insurance policy, may depreciate the costs of labor when the term "actual cash value" is not specifically defined in the policy?

4

Under the parameters set forth by state and federal law, the Court must analyze whether (1) the question above may be determinative of this case; (2) there is any controlling precedent on the issue in the decisions of the Arkansas Supreme Court or if the issue is novel and Arkansas law unsettled; (3) all facts material to the question are undisputed; and (4) the question presents an issue of substantial public importance and/or touches on public policy concerns of particular interest to Arkansas state law.  The Court finds preliminarily that there are no material facts in dispute as to the issue set forth.  Rather, the dispute between the parties centers on a legal interpretation of the terms of the policy.

**B.  Arkansas Law and "Actual Cash Value"**

Under Arkansas law, if the language of an insurance policy provision is unambiguous, effect should be given to the plain language of the policy without resorting to the rules of construction. *Norris v. State Farm Fire & Cas. Co.*, 341 Ark. 360, 366 (2000).  If the language is ambiguous, however, the policy is to be construed liberally in favor of the insured and strictly against the insurer. *Id.*  "[W]hether the language of the policy is ambiguous is a question of law to be resolved by the court." *Id.*[2]  "Language is ambiguous if there is doubt or uncertainty as to its meaning and it is fairly susceptible to more than one reasonable interpretation." *Elam v. First Unum Life Ins. Co.*, 346 Ark. 291, 297 (2001).

The Arkansas Supreme Court has not addressed the question of whether the term "actual cash value" in an indemnity insurance policy allows the insurer to depreciate the costs of labor in

---

[2]  The Arkansas Supreme Court has noted an exception to this rule: "Where . . . parol evidence has been admitted to explain the meaning of the language, the determination [of ambiguity] becomes one of fact for the jury to determine." *Elam v. First Unum Life Ins. Co.*, 346 Ark. 291, 297 (2001).  The Court finds that the issue in this case does not fall within that exception.

determining the "actual cash value" of a covered loss when the term is not defined in the insurance policy. Cameron Mutual argues that the Court should not certify this unanswered question of law to the Arkansas Supreme Court, but instead should make a determination based on a review of existing case law. Cameron Mutual contends the term "actual cash value" has a clear and unambiguous meaning, and that the majority of jurisdictions have held that the term "actual cash value" allows the insurer to depreciate the costs of labor.

A number of courts have decided the broader issue of whether depreciation may be taken into account in calculating "actual cash value" as it relates to materials and labor. Few courts have addressed the more narrow question of interpreting the meaning of "actual cash value" as it relates to labor only. Some courts looking at this issue have been aided by the fact that the insurance policy itself contains a definition of the term "actual cash value." That circumstance is not present in this case.

Two companion cases that have addressed this particular issue are *Branch v. Farmers Ins. Co.*, 55 P.3d 1023 (Okla. 2002) and *Redcorn v. State Farm Fire & Cas. Co.*, 55 P.3d 1017 (Okla. 2002). In *Branch* and *Redcorn*, the Oklahoma Supreme Court considered certified questions of law from the Tenth Circuit and the Western District of Oklahoma respectively. One question certified to the Oklahoma Supreme Court was "[i]n determining actual cash value, using the replacement costs less depreciation, may labor costs be depreciated?" *Branch*, 55 P.3d at 1025. As in the instant case, the policy at issue in *Redcorn* did not define "actual cash value," nor did it prescribe a means for determining actual cash value. *Redcorn*, 55 P.3d at 1019. Under Oklahoma law, however, "actual cash value" has a specific meaning that has been construed by the Oklahoma Supreme Court in accordance with the "broad evidence rule." *Id.* at 1019-20. The "broad evidence rule permits the

6

trier of fact to consider any evidence logically tending to establish the correct estimate of the value of the property at the time of the loss." *Id.* at 1022 (Boudreau, J., dissenting) (quotation omitted). Under the "broad evidence rule," "actual cash value . . . is a matter of fact to be determined by a consideration of all the relevant factors and circumstances existing at the time of loss," including appreciation or depreciation. *Id.* at 1020. Similarly to this case, the loss at issue in *Redcorn* was damage to a roof. The Oklahoma Supreme Court decided that a roof is the product of both materials and labor, and therefore, pursuant to the broad evidence rule, depreciation of labor should be allowed in determining "actual cash value." *Id.*

In *Tolar v. Allstate Texas Lloyd's Co.*, 772 F.Supp. 2d 825 (N.D. Tex. 2011), the court rejected the plaintiff's argument that "actual cash value" was ambiguous because it was not defined in the policy and held that Texas courts had defined "actual cash value" as "repair or replacement costs less depreciation." The court concluded that "replacement costs" unambiguously included depreciation of general contractor overhead and profit as well as sales tax. *Id.* at 831-832; *see also Goff v. State Farm Florida Ins. Co.*, 999 So.2d 684 (Fla. App. 2008) (holding under Florida law that depreciation of overhead and profit is allowed in determining actual cash value).

Notwithstanding the decisions of other courts in other jurisdictions, the Arkansas Supreme Court has not interpreted the term "actual cash value" in any case where the term is not defined in the insurance policy. Therefore, it cannot be said that the term "actual cash value" has been previously and explicitly defined by the judiciary under Arkansas law, such that the Court can find the term to be unambiguous as a matter of law.

Nor, contrary to Cameron Mutual's argument, has the term "actual cash value" been defined by statute in Arkansas. The statute Cameron Mutual relies upon "applies to an insurer or producer

transacting creditor-placed insurance as defined in this subchapter."  Ark. Code Ann. § 23-101-102(a).  There is no Arkansas statute that defines "actual cash value" in an indemnity insurance policy.  Furthermore, Ark. Code Ann. § 23-101-103(1) defines "actual cash value" as "the cost of replacing damaged or destroyed property with comparable new property, minus depreciation and obsolescence."  To the extent such definition has any persuasive weight in determining the meaning of "actual cash value" in the indemnity-insurance context, the definition still does not clearly resolve whether "depreciation" means depreciation of tangible goods only or allows for depreciation of both materials *and* labor.

Absent statutory or case law defining the term "actual cash value," this legal issue is one of first impression under Arkansas law.

### C.     Summary Judgment and Whether Issue Is Outcome Determinative

The clarification of Arkansas law on this point will very likely be determinative of this case. Cameron Mutual argues in its Motion for Summary Judgment that the Adamses' agreement to and acceptance of Cameron Mutual's payment on their claim constituted an accord and satisfaction of the Adamses' claim and that, therefore, the Adamses should be barred from recovery in this action.[3] If the Court were to find that Cameron Mutual is entitled to summary judgment, certification of the "actual cash value" issue to the Arkansas Supreme Court would not be appropriate, as the issue would not be outcome-determinative.  Cameron Mutual argues that the Adamses' agreement is evidenced by a Sworn Statement executed by the Adamses in their Proof of Loss, which acknowledged that the amount they claimed under the Policy was $39,204.88.  Cameron Mutual

---

[3] Cameron Mutual also argues, as an alternative basis for summary judgment, that the meaning of "actual cash value" unambiguously allows for depreciation of labor costs.  That issue is addressed in this Order in the context of the Adamses' Motion for Certification.

drafted the Adamses the full amount of their claim as stated in the Proof of Loss, and the Adamses cashed the draft.

The Adamses argue that the doctrine of accord and satisfaction is not applicable to this case. The Adamses base their argument on their assertion that the amount of their claim was not in dispute at the time they signed the Proof of Loss, and that a disputed amount is an essential element of an accord and satisfaction. The Adamses argue that their acceptance of Cameron Mutual's payment cannot be considered an accord and satisfaction because they did not know that they were actually entitled to more money at the time of their loss and that they did not know that their claim had been, as they allege, improperly adjusted and paid.

Under Arkansas law:

The doctrine of "accord and satisfaction" is defined as a settlement in which one party agrees to pay and the other to receive a different consideration or a sum less than the amount to which the latter considers himself entitled. The essential elements to prove accord and satisfaction are: (1) proper subject matter; (2) competent parties; (3) an assent or meeting of the minds; and (4) consideration. The key element is a meeting of the minds, such that there must be an objective indicator that the parties agreed that the payment tendered will discharge the debt. Accord and satisfaction is an affirmative defense that must be proved by the party asserting it.

*Morgan v. Turner*, 368 S.W.3d 888, 894-95 (Ark. 2010) (internal quotation omitted).

The Court disagrees with the Adamses that there can be no accord and satisfaction in this case because there was no dispute.[4] There will necessarily, in most every case imaginable, be some dispute as to an amount owed under an insurance policy when an insured makes a claim that does not clearly reach the policy limits. The fact that a claim may be settled expeditiously and without

---

[4] It does not appear clear that Arkansas law explicitly requires a dispute as a separate, necessary element of an accord and satisfaction. The Court will assume, however, that an element of dispute is at least implicitly required when determining whether an accord and satisfaction has occurred.

major objections does not negate the inherent dispute that exists between the insured claimant seeking payment and the insurer who is, after all, in business to make a profit.

The Court finds, nevertheless, that Cameron Mutual's Motion for Summary Judgment should be denied at this time. The Court cannot find that there was a meeting of the minds between the parties as to whether the Adamses signed the Proof of Loss and accepted payment from Cameron Mutual in full satisfaction of their claims. The signed Proof of Loss does not include any language that would appear to release Cameron Mutual from future claims made by the Adamses in regard to the tornado loss, nor has Cameron Mutual pointed to any language in the Policy which would prohibit the Adamses from making a supplemental claim upon discovering that their losses were actually greater than previously thought. Therefore, a genuine dispute of material fact remains as to whether the parties agreed that the amount tendered by Cameron Mutual, and accepted by the Adamses, fully satisfied Cameron Mutual's obligations to the Adamses as to any tornado loss. Cameron Mutual has not sustained their burden of showing that summary judgment is appropriate on its asserted affirmative defense, and summary judgment must therefore be denied.

Because the Court finds that Summary Judgment should be denied, it is likely that clarification by the Arkansas Supreme Court on the interpretation of "actual cash value" will be outcome-determinative in this case.

### D.     Public Interest

The final consideration is whether the question of the interpretation of "actual cash value" in this case presents an issue of substantial public importance and/or touches on public policy concerns of particular interest to Arkansas state law. The Adamses' claim for damages to a dwelling caused by a storm is one of an insurable interest affecting a large segment of the population. Most

everyone who owns a residence has had or will have a claim under their homeowners policy.  A person's residence is often his or her largest hard-asset financial investment, and having it properly insured against casualty losses is of extreme importance.  "Actual cash value" appears to be a commonly-used measure in the insurance industry, such that a large number of Arkansan homeowners could be affected by the determination made in this case.  Therefore, the legal question posed in this case would appear to be of substantial public importance that would merit certification to the Arkansas Supreme Court.

The guidance of other jurisdictions, while certainly instructive, is not helpful in predicting how the Arkansas Supreme Court would decide this case.  The decision of the Oklahoma Supreme Court is based on the "broad evidence rule," which has not been adopted in Arkansas.  There is also the issue of whether the term "actual cash value" is ambiguous under Arkansas law.  Courts in both Oklahoma and Texas ruled that the term was not ambiguous based on existing case law in those states.  There is no Arkansas case holding that the term "actual cash value" is either ambiguous or unambiguous.  Therefore, making an "Erie-educated guess" of the meaning of "actual cash value"as it relates to depreciation of labor costs under an insurance policy would be an educated guess with little guidance under Arkansas law.  The Court finds that the issue raised in this case touches on public policy concerns that are of particular interest to Arkansas state law and that it is, therefore, in the best administration of justice to seek further guidance from the Arkansas Supreme Court.

## III.    Conclusion

IT IS THEREFORE ORDERED that Plaintiffs' Motion the Certify Question of Law to the Arkansas Supreme Court (Doc. 10) is **GRANTED**.  The United States District Court for the Western District of Arkansas certifies to the Arkansas Supreme Court the following question which may be

determinative of this cause now pending before this Court and for which there appears to be no controlling precedent in the decisions of the Arkansas Supreme Court:

> Whether an insurer in determining the "actual cash value" of a covered loss under an indemnity insurance policy may depreciate the costs of labor when the term "actual cash value" is not defined in the policy.

This Court's statement of this question is not meant to limit the Arkansas Supreme Court's inquiry, and the Court acknowledges that the Arkansas Supreme Court may reformulate the question presented.

IT IS FURTHER ORDERED that Defendant's Motion for Summary Judgment (Doc. 13) is DENIED.

**IT IS SO ORDERED** this 3rd day of May, 2013.

/s/ P. K. Holmes, III

P.K. HOLMES, III
CHIEF U.S. DISTRICT JUDGE